UNTIED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| GERO MEYERSIEK, Petitioner | : | |
| V. | : | C.A. NO. 05-398ML |
| U.S. CITIZENSHIP AND IMMIGRATION SERVICES, ET AL., Respondents. | : | |

# AMENDED MEMORANDUM IN SUPPORT OF RESPONDENT'S MOTION TO DISMISS

## I. INTRODUCTION

Petitioner Gero Meyersiek ("Petitioner" or "Meyersiek") filed a petition seeking adjudication of his application for naturalization. The petition should be dismissed for lack of jurisdiction. The Bureau of Citizenship and Immigration Services of the Department of Homeland Security ("CIS") issued a decision, denying the application based upon its finding that Meyersiek lacked good moral character. Myersiek has appealed the decision administratively. Those proceedings are not yet concluded, therefore, petitioner has not exhausted his administrative remedies.

## II. TRAVEL OF THE CASE

### A. ADMINISTRATIVE PROCEEDINGS

#### 1. Background

Meyersiek was born on March 3, 1947, in Germany. He entered the United States on January 12, 1974, at New York, as an H-1 non-immigrant. Seven months later, he married Sophia G. Karvunis, a United States citizen, through whom he gained lawful permanent residence on September 2, 1975. The marriage, which resulted in the birth of two children,

Astrid Sarah (age 25) and Samantha Anne (age 21), ended in divorce on February 21, 2001 after the plaintiff fathered a child, Julia Bridget (age 5), by a former partner, Mary Seguin. See, Application for Naturalization (Form N-400), attached as Exhibit 1.

**2. Meyersiek's Application for Naturalization**

On November 2, 2002, Meyersiek filed an Application for Naturalization with the legacy Immigration and Naturalization (INS) Vermont Service Center (Exhibit 1). Several weeks after filing his Form N-400, he was arrested on November 20, 2002, and charged with assaulting Mary Seguin (Exhibit 2). Although this charge was dismissed on January 13, 2003, in the interim, Mary Seguin obtained a non-expiring protection order against Meyersiek on November 26, 2002 (Exhibit 3). The order specifically requires that Meyersiek refrain from "assaulting, threatening, abusing, harassing, following, interfering, or stalking the protected person and/or the child of the protected person."

On March 1, 2003, legacy INS was abolished and its functions were subsumed into the newly formed Department of Homeland Security (DHS). One of the new agencies formed, the United States Citizenship and Immigration Services (USCIS), assumed jurisdiction over the adjudication of immigration benefits. On February 3, 2004, an adjudicator with the USCIS Providence Sub-office interviewed Meyersiek in connection with his Form N-400 (See, Exhibit 1). In addition to requesting additional documentation related to Meyersiek's payment of child support, the adjudicator obtained information suggesting that he may have made false claims to

the UnumProvident Corporation when seeking disability payments to which he was not entitled. An investigative summary report supplied by UnumProvident verifies that payments Meyersiek had been receiving were discontinued as of January 2003, due to his concealment of numerous material facts affecting eligibility, and lying to secure a monthly benefit of $15,000 retroactive to December 5, 2001 (Exhibit 4). On January 26, 2006, the USCIS denied the Meyersiek's naturalization application pursuant to Title 8, Section 316.10 (b)(3)(ii) and 316.10 (b)(3)(iii) of the Code of Federal Regulations for failure to establish good moral character (Exhibit 5). Meyersiek had 30 days from the date of the denial decision to appeal by filing a Form N-336 (Request for Hearing on a Decision Naturalization Proceedings Under Section 336 of the INA). Meyersiek filed his appeal on February 23, 2006 (Exhibit 6).

**B. PROCEEDINGS IN THIS COURT**

Petitioner filed his Complaint with this Court on or about September 19, 2005, and served the United States Attorney on or about the same date.[1] He requests this Court to "grant him a

---

[1] Rule 4(i) requires that the United States Attorney, the Attorney General of the United States and the agency be served. It appears that only the United States Attorney was served, and therefore, the petition should be dismissed for lack of service, as well as failure to exhaust. Pursuant to Rules 12(b)(4) and 12(b)(5) of the Federal Rules of Civil Procedure, a defendant may move to dismiss an action if the plaintiff has failed to properly serve the United States. The procedure for service upon the United States is explicitly set out in Rule 4(i) of the Federal Rules of Civil Procedure.

Service on the United States is not complete without service on the United States Attorney and the Attorney General in accordance with Fed. R. Civ. P. 4(i)(1)(B). Failure to comply with these rules will result in dismissal of a party for lack of personal jurisdiction. Sanchez-Mariani v. Ellingwood, 691 F.2d 592, 594-95 (1st Cir. 1982). These are mandatory requirements which cannot be dispensed with as a simple formality. Smith v. McNamara, 395 F.2d 896, 898 (10th Cir. 1968), Franco-Rivera v. Chairman of Board of Directors of FDIC, 690 F. Supp. 118, 122 (D.P.R. 1988).

Moreover, 8 C.F.R. § 336.9 requires that the petition for review be served upon the

hearing on the merits of his Application for Naturalization, find him eligible for Naturalization and administer the oath of citizenship." See, Petition, Request for Relief.

## III. ARGUMENT

Petitioner bears the burden of proof that he meets all the requirements for naturalization, including that he is and has been a person of good moral character. 8 U.S.C. § 1427. "The burden is on the alien applicant to show his eligibility for citizenship in every respect." INS v. Pangilinan, 486 U.S. 875, 886 (1988) (citing Berenyi v. District Director, INS, 385 U.S. 630, 637 (1967)). See also, Plewa v. INS, 77 F. Supp. 2d 905, 908-09 (N.D. Ill. 1999). Any doubts are resolved in favor of the United States. Pangilinan, 486 U.S. at 885. See also, Plewa, 77 F. Supp. 2d at 908-09 (citing Berenyi, 385 U.S. at 637).

> When the Government seeks to strip a person of citizenship already acquired ... it carries the heavy burden of proving its case by "clear, unequivocal, and convincing evidence." But when an alien seeks to obtain the privileges and benefits of citizenship, the shoe is on the other foot ... Because that status, once granted, cannot lightly be taken away, the Government has a strong and legitimate interest in ensuring that only qualified persons are granted citizenship. For these reasons, it has been universally accepted that the *burden is on the alien applicant* to show his eligibility for citizenship *in every respect*. This Court has often stated that *doubts "should be resolved in favor of the United States* and against the claimant."

Berenyi, at 636-637 (emphasis supplied) (quoting United States v. MacIntosh, 283 U.S. 605, 626 (1931)) . "The freedoms and opportunities secured by United States citizenship long have been treasured by persons fortunate enough to be born with them, and are yearned for by countless less fortunate". Plewa, 77 F. Supp. 2d at 909 (quoting Fedorenka v. United States, 449 U.S. 490, 522

---

Attorney General of the United States and "upon the official in charge of the Service office where the hearing was held." In this case, the only evidence of service is that upon the United States Attorney, so dismissal of the complaint is mandated as a matter of law.

(1981). "Because the right to become an American citizen is such a precious one, no less precious than the right to liberty and life, there must be strict compliance with all the congressionally imposed prerequisites before conferring citizenship." Id. (citing Fedorenko, 449 U.S. at 506-07).

Morever, courts have no authority to confer citizenship if the statutory requirements have not been strictly met. Pangilinan, 486 U.S. at 884-85 ( "[t]he Congressional command ... [is manifestly clear], [n]either by application of the doctrine of estoppel, nor by invocation of equitable powers, nor by any other means does a court have the power to confer citizenship in violation of [statutory] limitations"); see also, Miller v. Albright, 523 U.S. 420, 456 (1998) (concurring opinion) (stating that "[b]ecause only Congress has the power to set the requirements for acquisition of citizenship by persons not born within the territory of the United States, federal courts cannot exercise that power under the guise of remedial authority").

The Government's motion should be granted because, Myersiek failed to exhaust his administrative remedies and the Court lacks a complete administrative record upon which to base its *de novo* review.

## A. STANDARD OF REVIEW

A complaint concerning a naturalization application is susceptible to dismissal for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules, because Congress made exhaustion of the administrative process an explicit prerequisite to judicial review of a naturalization denial. See, 8 U.S.C. § 1421(c). Exhaustion, where it is required by statute, is jurisdictional and must be enforced. See, e.g., McCarthy v. Madigan, 503 U.S. 140, 144 (1992); Theodoropoulos v. INS, 358 F.3d 162, 172 (2d Cir. 2004) (where exhaustion requirement is

statutory, common law "exceptions - including futility - [are] simply not available") (citation omitted), cert. denied, 125 S. Ct. 37 (2004); Bastek v. Federal Crop Ins. Co., 145 F.3d 90, 93-95 (2d Cir. 1998) ("Statutory exhaustion requirements are mandatory, and courts are not free to dispense with them."); Taylor v. United States Treasury Dep't, 127 F.3d 470, 475 (5th Cir. 1997) ("Whenever the Congress statutorily mandates that a claimant exhaust administrative remedies, the exhaustion requirement is jurisdictional because it is tantamount to a legislative investiture of exclusive original jurisdiction in the agency.") (citing cases).

**B. NATURALIZATION BACKGROUND**

Until 1990, United States district courts sat as naturalization courts[2] and were vested with exclusive jurisdiction to pass upon the qualification of an applicant for naturalization and to naturalize aliens as citizens of the United States. See, Shomberg v. United States, 348 U.S. 540 (1955); United States v. Waskowski, 158 F. 2d 962 (7th Cir. 1947). In 1990, Congress enacted the Immigration Act of 1990, Pub. L. No. 101-649, § 401, 104 Stat. 4978 ("IMMACT"), which overhauled the naturalization process. IMMACT transferred the power to naturalize from the district courts, and vested the Attorney General with "sole" authority to naturalize persons as citizens of the United States." 8 U.S.C. § 1421(a), [INA § 310(a)]. Since the enactment of IMMACT, the district courts have no authority to naturalize aliens. See, 8 U.S.C. § 1421(a) (granting exclusive authority to Attorney General to naturalize aliens).

**C. PETITIONER'S FAILURE TO EXHAUST HIS ADMINISTRATIVE REMEDIES**

Under the statutory scheme, if CIS issues a denial, an applicant must proceed through the

---

[2] Pursuant to 8 U.S.C. §§ 1101(a)(24), 1421(a) (1970), district courts came within the definition of a "naturalization court."

CIS administrative process before seeking judicial review. 8 U.S.C. §§ 1447(a), 1421(c), (d). The applicant must file a request for an administrative hearing within thirty (30) days of receiving notice of the denial. 8 C.F.R. § 336.2(a). See also, 8 U.S.C. § 1447(a). CIS must schedule a hearing promptly, *no later* than 180 days from the date upon which the notice of appeal is filed. 8 C.F.R. § 336.2(b). The hearing officer conducts a *de novo* review, and may hear additional testimony and receive new evidence. If, and only if, the hearing officer upholds the initial denial, an applicant may seek judicial review with the district court for the district in which the applicant resides. The denied application is then reviewed *de novo* by a district court. 8 U.S.C. § 1421(c).

Under section 1421(c), a district court has jurisdiction over only unsuccessful applicants whose applications for naturalization are denied even after an administrative appeal. See, 8 U.S.C. § 1447. Thus, administrative review of naturalization denials is a prerequisite before a district court can invoke its power of judicial review. The regulations also specify that the decision denying an application for naturalization "shall not be subject to judicial review until the applicant has exhausted those administrative remedies available to the applicant under 8 U.S.C. § 1447(a). In fact, the regulations require every petition for judicial review to state whether the validity of the decision to deny the application has been upheld in any prior administrative proceedings and to give the nature and date of those proceedings. See, 8 C.F.R. § 336.9(d); see also, Levy v. Davis, 83 Fed. Appx. 602, 2003 WL 22903857 at *1 (5th Cir. 2003) (*per curiam*) (finding that the district court was without jurisdiction to review the denial of plaintiff's application for naturalization where he failed to comply with the applicable regulations for obtaining an immigration hearing); Sanchez-Cruz v. I.N.S., 255 F.3d 775, 779 (9th Cir. 2001)

(Plaintiff required to exhaust remedies when any procedural or legal errors are capable of correction by the agency); Chavez v. Immigration and Naturalization Service, 844 F. Supp. 1224, 1225 (N.D. Ill. 1993) (stating that Congress did not intend "to permit a district court to circumvent the appeals process provided by statute"); Adiemereonwu v. Ashcroft, 2004 WL 1620245, *1, n.4 (N.D. Tex.) ("To the extent petitioner seeks an order compelling CIS to approve his application for citizenship, he has not exhausted his available administrative remedies.") (citing 8 U.S.C. § 1447(a), Saad v. Barrows, 2004 WL 1359165, *9 (N.D. Tex.) ("the court cannot review bases for naturalization eligibility not ... heard under 8 U.S.C. § 1447(a) by an immigration officer").

In this case, CIS issued a denial and petitioner appealed that denial. The next step in the administrative process is a hearing before an immigration officer at which petitioner may present evidence of his good moral character. A record will be created by the administrative body with experience in rendering determinations under the immigration code. The record will include the documentary evidence offered and the testimony of witnesses who appear and testify. If the immigration officer approves the application, there will be no need for a proceeding in this Court. If the application is not approved, the Court will have a complete, if not extensive, administrative record to review.

## IV. CONCLUSION

For the foregoing reasons, this Court should dismiss the petition for adjudication of naturalization and remand to the agency for the completion of the administrative proceedings.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

ROBIN E. FEDER
Assistant United States Attorney
Fleet Center
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000
(401) 709-5017

Of Counsel:
Ellen Gallagher
Special Counsel
Office of Chief Counsel
US Citizenship and Immigration Services

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by first-class mail, postage pre-paid, on the Petitioner by mailing same on this the 7th day of April, 2006, to:

David C. Potts, Esq.
575 East Main Road
Middletown, RI 02842